**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LYDIA NICHOLSON and BRAD BASSETT, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>E-TELEQUOTE INSURANCE, INC. (f/k/a TRG INSURANCE SOLUTIONS LLC), a Florida corporation, and TRG HOLDINGS, LLC, a Delaware limited liability company,<br><br>     Defendants. | Case No. 1:14-cv-04269<br><br>Judge: Hon. Robert M. Dow, Jr.<br><br>Magistrate: Hon. Geraldine Soat Brown |

**PLAINTIFFS' OPPOSITION TO DEFENDANT TRG HOLDINGS LLC'S
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)**

1

**INTRODUCTION**

This class action lawsuit arises from Defendants' TRG Holdings LLC ("TRG") and e-TeleQuote Insurance, Inc.'s ("e-TeleQuote") practice of making telemarketing calls to individuals throughout the nation whose telephone numbers appear on the National Do Not Call Registry, including Plaintiffs Lydia Nicholson's and Brad Bassett's ("Plaintiffs"), in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* As set forth below, TRG and e-TeleQuote work in a joint manner to market and sell e-TeleQuote's insurance products via telemarketing, and TRG is so closely involved in e-TeleQuote's operations that there is effectively no corporate separation between the two entities.

Defendant e-TeleQuote answered Plaintiffs' Complaint and did not challenge jurisdiction, but TRG moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. TRG relied on the Declaration of Pat Costello, who claimed that TRG has no connections to Illinois and was unrelated to e-TeleQuote. Jurisdictional discovery followed. Far from confirming the statements in the Costello Declaration regarding TRG's supposed lack of contacts with Illinois, discovery has shown that TRG has substantial contacts with Illinois inasmuch as it's the alter ego of, and also exercises unbridled control over, e-TeleQuote.

Indeed, the evidence thus far demonstrates that, by TRG's own admission, e-TeleQuote was an undercapitalized, "cash hungry" company kept afloat by millions of dollars in loans and capital contributions from TRG. Further, TRG employees dominated e-TeleQuote's board of directors, and TRG was initially the 100% owner of e-TeleQuote. Finally, TRG, either directly or through other related corporate entities, supplied e-TeleQuote with dialer equipment, consulting services for that equipment, cheap, outsourced telemarketing services in Pakistan, and free legal services supplied by TRG's general counsel, Pat Costello. Based on this evidence, it is clear that

this Court has general jurisdiction over TRG—as TRG was simply "doing business" in Illinois through e-TeleQuote, a company that it controlled.

For the reasons that follow, Plaintiffs respectfully request that this Court deny TRG's Motion and order TRG to answer Plaintiffs' Complaint so that this litigation can proceed.

## FACTS AND PROCEDURAL BACKGROUND

### A.      Plaintiffs' Allegations

Plaintiffs allege that Defendants TRG and e-TeleQuote work together to market and sell Medicare related health care plans to individuals over the age of fifty-five. (*See* Plaintiffs' Complaint ("Compl."), Dkt. 1-1 ¶ 21.) Defendants accomplish this by making telemarketing calls to individuals who have registered their telephone numbers on the National Do Not Call Registry in violation of the TCPA. (*Id.* ¶¶ 50–53.) Plaintiffs bring this case on their own behalves and on behalf of a class of similarly situated individuals, (*id.* ¶ 39), and seek monetary damages and injunctive relief. (*Id.* Prayer for Relief.)

Plaintiffs allege that these telemarketing calls are placed by e-TeleQuote with the assistance of TRG. TRG is an "investment holding company" that claims to have a portfolio of companies specializing in the "business process outsourcing sector," with a particular focus on companies that provide telemarketing services or rely heavily on telemarketing to sell their products and services. (Compl. ¶ 11.) TRG is closely involved in e-TeleQuote's business activities, and plays a direct role in e-TeleQuote's management, development, and execution of its business plans. (*Id.* ¶¶ 13–14.) Simply put, Plaintiffs allege that e-TeleQuote is simply an extension of TRG and so closely held as to eliminate any corporate separation. (*Id.*)

**B.** **TRG moves to dismiss Under Fed. R. Civ. P. 12(b)(2), and Plaintiffs are granted leave to take jurisdictional discovery as to whether TRG's close relationship with e-TeleQuote subjected it to personal jurisdiction in Illinois**

On July 30, 2014, TRG moved to dismiss Plaintiffs' Complaint arguing that the Court lacked personal jurisdiction over it. In support, TRG attached the Declaration of Pat Costello, TRG's general counsel, which stated that TRG is a company headquartered in Washington D.C. and that neither TRG nor its officers have ever done business in, resided in, done business with any other entities, or maintained any other business contacts in Illinois. (Dkt. 19-1 ¶¶ 3, 5–10.) Pat Costello also provided testimony concerning TRG's relationship with e-TeleQuote, stating that (1) e-TeleQuote is not a subsidiary of TRG (*id.* ¶¶ 11–14); (2) TRG does not own any shares in e-TeleQuote (*id.* ¶ 15); (3) TRG does not control e-TeleQuote, nor is it involved in its day-to-day business operations (*id.* ¶¶ 15–16); and (4) TRG does not provide e-TeleQuote with any resources such as dialing equipment, call centers, or related software (*id.* ¶¶ 17–18).

At the August 5, 2014 presentment hearing on TRG's motion, this Court allowed jurisdictional discovery after Plaintiffs explained that they required discovery into the nature of TRG's relationship with e-TeleQuote, as the Costello Declaration refuted some (but not all) of the allegations in Plaintiffs' Complaint, and that Plaintiffs believed jurisdiction existed over TRG based on TRG's close relationship with e-TeleQuote, who had already answered the Complaint and consented to personal jurisdiction in this Court. (Transcript of August 5, 2014 Hearing, which is attached to the Declaration of John C. Ochoa ("Ochoa Decl.") as Exhibit A, at 2; Dkt. 21.)

**C.** **Jurisdictional discovery has confirmed that TRG is the alter ego of e-TeleQuote and also that TRG exercises unbridled control over e-TeleQuote**

Pursuant to this Court's August 5, 2014 Order (dkt. 22), Plaintiffs took jurisdictional discovery on TRG, which included document requests and the deposition of TRG's Rule 30(b)(6) corporate representative, Pat Costello. Plaintiffs' discovery has confirmed their allegations

concerning the interrelatedness of TRG and e-TeleQuote, and has shown that many of the

statements in the Costello Declaration are either refuted by the evidence or ignore the relationship

between the TRG and e-TeleQuote. Discovery has shown that e-TeleQuote and TRG are just two

of a larger network of companies owned by a Bermuda holding company called The Resource

Group International, Ltd. ("TRGI") (Ochoa Decl., Exhibit B, Documents Produced by TRG at 24,

hereinafter "TRG [bates number]"). The primary business of TRGI is providing telemarketing

infrastructure, equipment, capital funding, and oversight to its subsidiary companies. (Compl. ¶¶

11–12.) In summary, the jurisdictional discovery has shown the following:

- Up to October 2013, e-TeleQuote was a subsidiary of TRG and its board of directors consisted entirely of TRG employees. After October 2013 to the present, e-TeleQuote's board of directors is still controlled by TRG employees.

- TRG provided substantial loans and capital contributions to e-TeleQuote totaling over $4.5 million. Moreover, TRG, through its parent company and managing partner TRGI, guaranteed another $2.4 million in loans to e-TeleQuote.

- TRG, through its parent company TRGI, entered into a contract (drafted by TRG's general counsel) to provide e-TeleQuote with "TRG agent dialer equipment" for e-TeleQuote to use in its call center operations.

- TRG was involved in e-TeleQuote's operations and contracted to provide e-TeleQuote with consulting services for e-TeleQuote's call center operations.

- TRG's general counsel was heavily involved in e-TeleQuote's legal affairs, drafting contracts between e-TeleQuote and TRGI, providing legal advice, and assisting with various corporate reorganizations.

- e-TeleQuote obtained employees for some of its call center needs from another TRGI-affiliated Pakistani company—eTeleQuote Private, plc.—at an extremely low rate of $2.50 per hour per employee for call center work.

As described in more detail below, TRG, TRGI and e-TeleQuote worked together for the

purpose of sustaining and operating e-TeleQuote's telemarketing business and, moreover, TRG is

simply the "operational arm" of the TRGI.

**LEGAL STANDARD**

In resolving a motion brought under Rule 12(b)(2), the Plaintiffs bear the burden of showing that personal jurisdiction exists. *Levin v. Posen Foundation*, --- F. Supp. 2d ---, 2014 WL 3749189, at *2 (N.D. Ill. July 29, 2014). The Court should "resolve[] factual disputes in the pleadings and affidavits in favor of the party asserting jurisdiction, but take[] as true those facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, 2009 WL 1543892, at *2 (N.D. Ill. June 3, 2009) (internal citation omitted). On the other hand, courts will "accept all allegations of the complaint as true except those controverted by defendants' affidavits." *Minemyer v. R-Boc Representatives, Inc.*, 2007 WL 2461666, at *2 (N.D. Ill. Aug. 24, 2007) (internal quotation omitted). Since this lawsuit arises under federal question jurisdiction (*see* dkt. 1 ¶ 7), and the TCPA does not provide for nationwide service of process, the court should look to Illinois law and Illinois' long-arm statute to determine if jurisdiction would be proper. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).[1]

**ARGUMENT**

Defendant's Motion to Dismiss argues at length that this Court does not have jurisdiction over TRG because it does not have sufficient contacts with Illinois such that it could be subjected to jurisdiction. But Defendant's extended discussion about how TRG does not have any offices in Illinois and does not transact business in Illinois is meant simply as a diversion. Plaintiffs advance

---

[1] Although this analysis normally entails two parts, first, whether Illinois law allows jurisdiction, and second, whether the assertion of jurisdiction complies with due process, Illinois' long-arm statute has effectively "collapse[d] the two inquires into one," by stating that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Glass v. Kemper Corp.*, 930 F. Supp. 332, 337 (N.D. Ill. 1996) (citing 735 ILCS 5-2/209(c)).

two theories of general jurisdiction[2] based on TRG's close relationship with e-TeleQuote—the

Defendant that this Court does have personal jurisdiction over. It is through TRG's extensive

control and involvement in e-TeleQuote's business operations that this Court gains personal

jurisdiction over TRG, as TRG is simply "doing business" in Illinois through e-TeleQuote.

**I.      This Court has personal jurisdiction over TRG based on TRG's level of control of Defendant e-TeleQuote, who has conceded personal jurisdiction in this Court**

Illinois courts recognize two separate bases for exercising jurisdiction over a foreign

defendant based on a co-defendant over whom the court does have jurisdiction. First, this court

will have jurisdiction over TRG if the Plaintiffs can show "that [TRG] substantially controls the

activities of [e-TeleQuote]" who is and was doing business in Illinois. *Gruca v. Alpha Therapeutic*

*Corp.*, 19 F. Supp. 2d 862, 866 (N.D. Ill. 1998); *see also Liberty Mut. Fire Ins. Co. v. Reimer Exp.*

*Enterprises, Ltd.*, 82 F. Supp. 2d 887, 890 (N.D. Ill. 2000) (finding that under this standard that

"total control is not necessary. 'Some control' or 'at least significant connections' may, in certain

factual situations, be enough" (internal citation omitted).) Under this standard, Plaintiffs need not

demonstrate that the two parties are "alter-egos" of one another for all purposes. *Japax, Inc. v.*

*Sodick Co.*, 542 N.E.2d 792, 797 (Ill. App. Ct. 1989). Second, the Plaintiffs can establish

---

[2] Plaintiffs do not assert at this time that the Court has personal jurisdiction over TRG based on specific jurisdiction. However, merits discovery may reveal that this provides an additional basis for this Court to have jurisdiction over TRG. "Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 472 (1985)). As explained in the Background Section B, discovery was limited to jurisdictional discovery, and Plaintiffs did not have an opportunity to take discovery into the facts underlying their cause of action, and consequently could not determine if TRG was directly involved in the alleged unlawful telemarketing calls to Plaintiffs and the putative Class—although, as discussed above, TRG did indirectly supply e-TeleQuote with dialer equipment, and with a TRG consultant for that equipment. It is possible that as discovery commences, facts could be uncovered that show that TRG was involved in the telemarketing calls at issue to such a degree that it could be held vicariously liable, and similarly, that this Court would have personal jurisdiction over it.

jurisdiction over TRG by showing an alter-ego relationship existed between the two defendants. *Gruca*, 19 F. Supp. 2d at 866.

Based on these standards, Plaintiffs have met their burden to show that TRG sufficiently controlled e-TeleQuote such that this Court has personal jurisdiction over TRG based on the standards set forth in *Japax* and *Reimer Express Enterprises*. Plaintiffs' jurisdictional discovery has also sufficiently rebutted TRG's statements that it is not the "alter-ego" of e-TeleQuote. Since this Court must resolve factual disputes in Plaintiffs' favor, both theories of personal jurisdiction provide a basis for this Court to assert personal jurisdiction over TRG.

A.     **This Court has personal jurisdiction over TRG because it was "doing business" in Illinois through e-TeleQuote**

Defendant e-TeleQuote has already answered Plaintiffs' Complaint and, in so doing, submitted to personal jurisdiction in this Court.[3] (e-TeleQuote's Answer, Dkt. 21.) Any attempt by e-TeleQuote to challenge personal jurisdiction would have been futile in any event. Plaintiffs allege that e-TeleQuote is registered to do business in this State and placed telemarketing calls to this state—allegations that are unrebutted by evidence and must be taken as true at this stage. (Compl. ¶ 9.) Going beyond the pleadings, e-TeleQuote also reported 10% of its income on its Illinois tax return in 2012 from its activities within Illinois. (TRG 36.) From July 2010 to June 2011, e-TeleQuote (then organized as "TRG Insurance Solutions LLC") reported *over half* of their income as allocable to Illinois. (TRG 42.) As such, this Court has general jurisdiction over e-TeleQuote under the "doing business" standard of personal jurisdiction. *See Kavo Am. Corp. v. J.F. Jelenko & Co.*, 2000 WL 715602, at *4 (N.D. Ill. June 2, 2000) (finding general jurisdiction

---

[3] *Abiola v. Abubakar*, 267 F. Supp. 2d 907, 917 (N.D. Ill. 2003) *aff'd and remanded sub nom. Enahoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) (finding defendant waived any challenge based on personal jurisdiction by not filing a Rule 12(b)(2) motion and by answering the complaint while failing to raise an affirmative defense based on lack of personal jurisdiction).

over defendant based on 10% of overall income being derived from Illinois activities).

Since this Court already has jurisdiction over e-TeleQuote, the pertinent issue for this motion is whether TRG was involved in e-TeleQuote's operations to such an extent that it can be deemed to be "doing business" in Illinois through e-TeleQuote, and, thus, subjects itself to personal jurisdiction in this state. *See Dual-Temp of Illinois v. Hench Control Corp.*, 2009 WL 4674105, at *9 (N.D. Ill. Dec. 4, 2009) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003) (finding personal jurisdiction over parent appropriate where parent exercises unusually high degree of control over subsidiary). Factors that may be considered under this test are whether (1) the foreign company "loans" employees to the domestic company; (2) whether the two companies share individuals on the board of directors; (3) whether the foreign company has loaned or guaranteed money for the subsidiary; (4) whether the foreign company provided training and assistance in service activities; (5) whether the two companies regularly communicate; and (6) whether the domestic company "reports to" the foreign company. *Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 889–90. Jurisdictional discovery in this case has shown that nearly all of these factors are met.

### 1. TRG and its affiliates operated as one entity to support and manage e-TeleQuote's call center operations

TRG, TRGI, and e-TeleQuote for all practical purposes operated as one entity. The affiliated companies of particular note for the purposes of this Opposition are:

- TRGI. TRGI does not have physical offices or any employees, but it does have ten directors who are scattered around the world. (Deposition Transcript of Pat Costello, attached as Exhibit C to the Ochoa Decl., (hereinafter "Costello Dep.") at 22.) TRGI is a 100% owner of TRG. (TRG 24.)

- Defendant TRG. TRG is a "portfolio management company" whose primary purpose is to "seek and manage investment opportunities exclusively for [TRGI] in the technology services businesses, and to engage in all activities reasonably necessary and incidental thereto." (TRG 6).

8

- Defendant e-TeleQuote. e-TeleQuote is one such "portfolio company" of TRGI. (Costello Dep. at 95.) For the last 5 years, e-TeleQuote has maintained call center operations to sell health insurance. (Costello Dep. at 39–41.)

- e-TeleQuote Private, Ltd. ("e-TeleQuote Private"). e-TeleQuote Private is a TRGI portfolio company and Pakistani affiliate of e-TeleQuote that provided e-TeleQuote with call center operations. (TRG 24; 81 Costello Dep. 64.)

As described below, TRG, TRGI, and e-TeleQuote Private worked in a coordinated manner to facilitate e-TeleQuote's call center operations, providing equipment, funding, technical oversight, and legal counsel. Notably, TRG and TRGI did not conduct any specific business or sell their own products, but rather existed solely to support their "portfolio" companies such as e-TeleQuote. This is strikingly similar to the defendant's corporate structuring in *Liberty Mut. Fire Ins. Co. v. Reimer Exp. Enterprises, Ltd.*, as the two foreign defendants in that case did not conduct any business of their own, but rather existed to prop up their subsidiaries, which did do business in this state. 82 F. Supp. 2d at 888-89. There, the court found personal jurisdiction over those two foreign defendants. *Id.* The same result is warranted here.

### 2. TRG controlled e-TeleQuote through ownership interests and dominating e-TeleQuote's board of directors

Although Pat Costello's Declaration is technically accurate in that e-TeleQuote is not *currently* a subsidiary of TRG, that was not always true. Before e-TeleQuote incorporated in 2013, e-TeleQuote was a limited liability company. (Costello Dep. at 114–115.) When e-TeleQuote was a limited liability company, it was a subsidiary that was controlled by TRG. (*Id*.) In fact, as of April 7, 2010, e-TeleQuote was owned entirely by Mohammed Khaishgi, the Chief Operating Officer of TRG. (TRG 23.) He appointed Hasnain Aslam and Shuja Keen (who are also Managing Directors of TRG) to the board of directors of e-TeleQuote. (Costello Dep. at 16, 18; TRG 23.) At that time, e-TeleQuote's secretary was Pat Costello, who is also TRG's general counsel. (TRG 23;

9

Costello Dep. at 5.)

On October 31, 2013, e-TeleQuote LLC reorganized as a corporation. (TRG 20–22.) TRG's general counsel Pat Costello assisted with the corporate restructuring efforts along with outside counsel. (Costello Dep. at 55-56.) e-TeleQuote elected three board members—Anthony Solazzo, Hasnain Aslam, and Mohammed Khaishgi. (TRG 150.) Of those three board members, two—Aslam and Khaishgi—are TRG employees. (Costello Dep. at 15–17.) At the same time, e-TeleQuote also waived "all formal requirements, including the necessity of holding a formal or informal meeting and any requirements that notice of such meeting be given . . ." (TRG 147.) e-TeleQuote's shares were subsequently reshuffled within The Resource Group, with the help of TRG's general counsel, and majority ownership of the company eventually landed with e-TeleQuote plc., which was in turn owned by TRGI. (Costello Dep. at 42–44; TRG 97–101.)

This parent-subsidiary relationship, plus the substantial overlap in directors and ownership strongly suggests that TRG was simply "doing business" through e-TeleQuote. *See Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E. 2d 1045, 1046 (Ill. App. Ct. 1986) (finding personal jurisdiction over parent company where majority of subsidiaries' board of directors consisted of employees of parent company); *Japax, Inc.*, 542 N.E.2d at 797 (same); *FAIP N. Am., Inc. v. Sistema s.r.l.*, 2005 WL 3436398, at *4 (N.D. Ill. Dec. 14, 2005) (finding personal jurisdiction over parent company which shared two of the three corporate officers with the subsidiary).[4]

### 3. e-TeleQuote was a "cash hungry" company that required capital contributions from TRG to stay viable

TRG claims in its motion that e-TeleQuote was not "undercapitalized." (Def. MTD at 11.)

---

[4] Although TRG is correct that overlap of individuals on the parent and subsidiary companies' board of directors alone is not enough to confer jurisdiction, it is a factor considered. And, as described below, considering the substantial amount of involvement TRG had in e-TeleQuote's operations, all of these facts combined satisfy the jurisdictional inquiry.

This also is not true. TRG's corporate designee described e-TeleQuote's business as "cash hungry," meaning that it costs more up front to make a sale than the company would earn on the transaction. (Costello Dep. at 32, 34–35.) This is reflected by e-TeleQuote's tax returns, as they reported losses exceeding $3,000,000 in 2012 and 2013. (TRG 25–34.) As a result, e-TeleQuote received numerous cash contributions from TRG to stay afloat. These contributions included two loans in 2014, one for $800,000 and another for $1,356,482, a nearly 1.8 million dollar capital contribution in 2013, and a $740,000 capital contribution in 2012. (TRG 74; 318-319; 333.) Over three years, TRG's contributions totaled approximately $4.5 million. e-TeleQuote also received at least nine additional loans from outside entities totaling nearly $2.5 million which were guaranteed by TRGI and e-TeleQuote plc. (TRG 112–135; 192–206; 234–244; 247–252.) These numerous cash infusions, loans, and guarantees are also strong evidence that TRG was doing business through e-TeleQuote. *See Gruca*, 19 F. Supp. 2d at 867; *Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 890 (finding personal jurisdiction satisfied when parent loaned a "great deal" of money to subsidiary over a five-year period); *Japax, Inc.*, 542 N.E.2d at 796 (finding it significant that parent company made numerous loans to subsidiary, and guaranteed even more loans on subsidiary's behalf).

### 4. TRG was heavily involved in e-TeleQuote's call center operations

In addition to having the practical ability to control e-TeleQuote through holding a majority stake on e-TeleQuote's the board of directors, TRG was also directly involved in e-TeleQuote's core operations, contrary to the statements in the Costello Declaration. (*See* dkt. 19-1 ¶ 16.) For instance, TRG's general counsel, Pat Costello, provided legal services to e-TeleQuote. (Costello Dep. at 59.) These legal services included participating in the reorganization of e-TeleQuote described in Section D.2 above, (Costello Dep. at 55-56) and drafting contracts for e-

TeleQuote (Costello Dep. at 70). This is despite the fact that Pat Costello was "never general counsel of e-TeleQuote." (Costello Dep. at 59.) This provision of legal counsel likewise tends to prove that TRG was doing business through e-TeleQuote. *Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 890 (finding principal company was "doing business" through Illinois subsidiary where, *inter alia*, parent companies' attorney provided legal counsel and business advice to subsidiary).

The Costello Declaration also claims that TRG didn't provide e-TeleQuote with "dialing equipment, call centers, quality control services or related software." (Dkt. 19-1 ¶ 18.) This also is not entirely accurate. TRGI provided e-TeleQuote with call center equipment, as well as operational and maintenance services on that equipment through a contract drafted by TRG's general counsel Pat Costello. (TRG 299-305; Costello Dep. at 59–60, 62–64, 70–71). This software is called the "TRG agent dialer call management system," and is "software that is used in call centers to help route calls." (Costello Dep. at 70–71.) e-TeleQuote and TRG also entered into a flat-rate contract for TRG to provide "IT consulting services," which included providing support for e-TeleQuote's call center dialing equipment, and other "operational details." (TRG 76-81; Costello Dep. at 62, 73.) Coincidentally, this contract for consulting services and the contract with TRG for the "TRG dialer equipment" were both executed on the same day. (TRG 84; 299.)

Such consulting and the supply of dialing-related equipment also strongly suggests—if not establishes—that TRG was simply doing business through e-TeleQuote. *Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 890 (finding personal jurisdiction existed where parent companies provided "consulting" services to subsidiary); *Quad-L, Ltd. v. Tastee-Freez of W. Cent. Illinois*, 528 N.E.2d 1107, 1109 (Ill. App. Ct. 1988) (finding personal jurisdiction where parent company provided training to subsidiary employees).

e-TeleQuote also contracted for call center services supplied by another TRGI affiliate—e-TeleQuote Private based out of Pakistan. (TRG 76-81.) These services would be provided for the low rate of $2.50 per hour per employee. (TRG 81.) This is yet another example of "The Resource Group" family of companies simply doing business in Illinois through e-TeleQuote. *See Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 890 (finding personal jurisdiction over parent company where it "loaned" employees to the subsidiary).

### 5. The policy rationale for obtaining personal jurisdiction over TRG is met here, because, for all practical purposes, TRG was "doing business" through e-TeleQuote

In short, not only would e-TeleQuote be out of business if it were not for TRG, but TRG played an integral role in ensuring that e-TeleQuote's call center operations continued uninterrupted. In this situation, the policy rationale for finding personal jurisdiction over foreign defendants is undoubtedly met, as TRG should not be allowed to use its subsidiary e-TeleQuote to conduct business and report income in Illinois, yet avoid jurisdiction of the courts here. *See Japax, Inc.*, 542 N.E.2d at 797; *see also Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 891.[5]

Notably, under this "doing business" test, "total control" is not necessary—rather, "some control," or "significant connections," may be sufficient. *Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d at 890. Based on these facts, this Court should find that TRG was "doing business" in Illinois through e-TeleQuote, its longtime subsidiary company that it controlled, funded, and provided with call center equipment and related consulting services, so that e-TeleQuote could conduct substantial business in this State.

---

[5] "[Defendants] cannot insulate themselves from lawsuits in Illinois by operating through "shelf" corporations while owning from 80–100% of a corporation doing business in Illinois, paying its bills and legal fees, extending it loans and guarantees, loaning it personnel, giving it business advice and requiring approval for its activities by their own attorney." *Id.*

B. **TRG and e-TeleQuote are alter-egos of one another, and as such, personal jurisdiction over TRG would be proper**

Although Plaintiffs have already demonstrated that this Court has personal jurisdiction over TRG based on the standard set forth above, this Court should also find that it has jurisdiction over TRG because it is the alter-ego of e-TeleQuote. The court may consider several factors to determine if an alter-ego relationship exists, including (1) failure to comply with corporate formalities; (2) comingling of funds or assets; (3) undercapitalization; (4) whether one entity treats the assets of the other as its own. Courts will also consider whether the two entities have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, 2009 WL 1543892, at *2 (N.D. Ill. June 3, 2009) (internal quotation omitted). If, in considering these factors, the Court finds that the two entities are alter-egos, then the court would have personal jurisdiction over both. *Id.*

Here, these elements are also met. First, e-TeleQuote, by decree of its board of directors (which consisted of two TRG employees), agreed to waive its formal meeting and notice requirements. (TRG 147.) This suggests a disposal of corporate formalities present in analogous cases where courts find that two entities are alter-egos. *See Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1024 (N.D. Ill. 2009). Second, e-TeleQuote was an undercapitalized, "cash hungry" company that was reporting multi-million dollar losses on its income tax returns, and was being kept afloat by loans and capital contributions of TRG totaling in the millions of dollars. (*See* § I.A.3 *supra*.) This level of undercapitalization is "fertile ground for veil-piercing, at least at this stage." *Dual-Temp of Illinois*, 2009 WL 4674105, at *9. Third, throughout the relationship between TRG and e-TeleQuote, TRG controlled e-TeleQuote's board of directors, and for a period

of three years had a controlling interest in e-TeleQuote. (*See* § I.A.2 *supra*.) Finally, TRG (and its parent TRGI) provided e-TeleQuote with call center equipment and consulting services on that equipment. (*See* § I.A.4 *supra*.)

TRG argues in its Motion that a showing of alter-ego has not been met because the Declaration of Pat Costello demonstrated that (1) TRG and e-TeleQuote have separate boards of directors; (2) e-TeleQuote is not a subsidiary of TRG; and (3) TRG doesn't exercise control over e-TeleQuote's day-to-day operations. TRG further claims that "there is no evidence" that either entity is undercapitalized or that there was a failure to comply with corporate formalities. (Def. MTD at 11.) As discussed in this Opposition, however, the evidence obtained during jurisdictional discovery contradicts the statements in Costello's Declaration. For purposes of this Motion, the Court must resolve these factual disputes in Plaintiffs' favor. *Chicago Reg'l Council of Carpenters*, 2009 WL 1543892, at *2. And TRG's unsupported statements that e-TeleQuote is not undercapitalized and observed corporate formalities is belied by the evidence, which shows that e-TeleQuote *is* undercapitalized (and kept afloat by TRG), and that e-TeleQuote's board elected to forgo corporate formalities such as board meetings.

In short, TRG's arguments against a finding of alter-ego are contradicted by the evidence adduced during jurisdictional discovery. This Court should find at this stage in the case that Plaintiffs have presented evidence showing that TRG and e-TeleQuote were alter-egos of one another, and accordingly that this Court has personal jurisdiction over TRG because of it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny TRG's Motion in its entirety and grant whatever further relief it deems reasonable and just.

Respectfully submitted,

Dated:  April 10, 2015

**LYDIA NICHOLSON AND BRAD BASSETT**, individually and on behalf of all others similarly situated,

By:  /s/  John C. Ochoa
     One of Plaintiffs' Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, John C. Ochoa, an attorney, certify that on April 10, 2015, I served the above and foregoing ***Plaintiffs' Opposition to Defendant TRG Holdings, LLC's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system on this the 10th day of April, 2015.


/s/  John C. Ochoa

17