**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LYDIA NICHOLSON and BRAD BASSETT, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-04269 |
| | Judge: Hon. Robert M. Dow, Jr. |
| Plaintiffs, | Magistrate: Hon. Geraldine Soat Brown |
| v. | |
| E-TELEQUOTE INSURANCE, INC. (f/k/a TRG INSURANCE SOLUTIONS LLC), a Florida corporation, and TRG HOLDINGS, LLC, a Delaware limited liability company, | |
| Defendants. | |

**DECLARATION OF JOHN C. OCHOA IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO DEFENDANT TRG HOLDINGS, LLC'S MOTION TO DISMISS**

I, John C. Ochoa, hereby aver, pursuant to 28 U.S.C. § 1746, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

1.      I am an adult over the age of 18 and a resident of the State of Illinois. I am an attorney representing Plaintiffs Lydia Nicholson and Brad Bassett and the putative Class in this matter and am admitted before this Court. I am fully competent to make this Declaration, and make such Declaration in support of Plaintiffs' Opposition to Defendant TRG Holdings, LLC's Motion to Dismiss.

2.      Attached to this Declaration as Exhibit A is a true and accurate copy of the transcript from the hearing on August 5, 2014 before this Court.

3.      Attached to this Declaration as Exhibit B is a true and accurate copy of excerpts of documents produced by TRG Holdings, LLC in this litigation. TRG designated some of these

documents as "Confidential" pursuant to the Court's December 8, 2014 Protective Order, and as such Plaintiff will seek to file a portion of this exhibit under seal.

      4.      Attached to this Declaration as Exhibit C is a true and accurate copy of excerpts from the February 4, 2015 deposition of Pat Costello. TRG designated this deposition as "Confidential" pursuant to the Court's December 8, 2014 Protective Order, and as such Plaintiff will seek to file this exhibit under seal.

      I declare under penalty of perjury that the above and foregoing is true and accurate. Executed on this 10th day of April 2015 at Chicago, Illinois.

          /s/  John C. Ochoa
          John C. Ochoa

# Exhibit A

1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3    LYDIA NICHOLSON, et al.,          )
                                       ) Docket No. 14 C 4269
4              Plaintiffs,             )
                                       ) Chicago, Illinois
5         v                            ) August 5, 2014
                                       ) 9:00 a.m.
6    E-TELEQUOTE INSURANCE, INC.,      )
     et al.,                           )
7              Defendants              )

8

            TRANSCRIPT OF PROCEEDINGS
9    BEFORE THE HONORABLE ROBERT M. DOW, JR.

10

11   PRESENT:

12   For the Plaintiffs:        JOHN C. OCHOA
                                Edelson P.C.
13                              350 North Lasalle Street
                                Suite 1300
14                              Chicago, Illinois 60654

15   For the Defendants:        DAVID S. ALMEIDA
                                Sheppard Mullin Richter
16                                 & Hampton, LLP
                                70 West Madison Street
17                              48th floor
                                Chicago, Illinois 60602

18

19   Court Reporter:            Lois A. LaCorte
                                219 South Dearborn  Room 1918
20                              Chicago, Illinois 60604
                                (312) 435-5558

21

22

23

24

25

1      THE CLERK:   14 C 4269, Nicholson v E-Telequote.

2      THE COURT:   Good morning.

3      MR. ALMEDIA: Good morning, your Honor, David Almedia on

4  behalf of E-Telequote, TRG Holdings.

5      MR. OCHOA:   Good morning, your Honor, John Ochoa on

6  behalf of plaintiffs.

7      THE COURT:   So one defendant has answered and the other

8  is moving to dismiss for lack of personal jurisdiction, is

9  that right?

10      MR. ALMEIDA:   That's correct, your Honor.

11      THE COURT:   Okay.  And then has the plaintiff had a

12  chance to look at this yet?

13      MR. OCHOA:   Yes, your Honor, we have had a chance to

14  look at the answer and the motion to dismiss.  The plaintiffs

15  in this case allege that E-Telequote and TRG made

16  telemarketing calls to consumers throughout the country to

17  sell their health insurance products.  Both plaintiffs had

18  registered their telephone numbers on the national Do Not Call

19  registry and received calls despite this.

20      We have had a chance to review the motion to dismiss.

21  The plaintiff in his complaint makes numerous allegations as

22  to the close relationship between E-Telequote and TRG, as such

23  that they act as a unified company, and if that's the case,

24  then the court would have personal jurisdiction over TRG as

25  E-Telequote has already answered.

1       TRG submitted a declaration that refutes some of the

2  allegations of the complaint. It doesn't address other

3  allegations in the complaint.

4     The plaintiff would ask for some jurisdictional discovery

5  to explore the relationship between the two parties to

6  determine whether there is jurisdiction there.

7     THE COURT: Okay, any problem with that?

8     MR. ALMEIDA: No, your Honor, as long as it's

9  appropriately tailored to strictly the jurisdictional issue

10  and not any merits inquiry at this time.

11     THE COURT: Okay, that makes sense. So why don't I just

12  put a minute order in that says that the parties are directed

13  to conduct focused discovery limited to the jurisdictional

14  issue raised in the motion and that once guys feel that you

15  have completed the discovery, you're to submit an agreed

16  briefing schedule on the motion to dismiss unless you agree

17  with the relief requested. Sound good?

18     MR. OCHOA: Sounds good.

19     MR. ALMEIDA: The only clarification I would ask is

20  whether or not we need to specifically delineate whether or

21  not it's a doc request and oral examination of the declarant

22  Mr. Costello and do you have a sense at this time what sort of

23  discovery you would envision?

24     MR. OCHOA: We anticipate some written discovery first

25  and then once we get the responses, a deposition.

PDF created with pdfFactory trial version www.pdffactory.com

1     THE COURT:  I was going to say why don't you start with

2  the written and see what you find out there.  If you need to

3  take a deposition or two that follows up on what you get in

4  the written documents, that would probably be fine.

5     If you guys reach an impasse on that, let me know. I hope

6  you won't.  If you do, you will probably go to Judge Brown and

7  she will help you work that out.  But I hope you don't.  But I

8  don't think it makes sense to set a briefing schedule yet

9  until you guys see how long it's going to take to get the

10  documents and take the deposition if necessary, okay?

11     But I'm going to put it on you guys then to give me a

12  schedule when you finish the discovery, okay?

13  MR. OCHOA:  Sounds good.

14  THE COURT:  Very good.  Thank you guys.

15      *         *         *

16     I certify that the above is a true and correct

17     transcript of proceedings had in the above matter.

18

19     /s/ Lois A. LaCorte

20    —————————————————————  —————————————

21     Lois A. LaCorte          Date

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit B

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT
## TRG HOLDINGS, LLC

### A Delaware Limited Liability Company

THIS OPERATING AGREEMENT is made and entered into effective March 20, 2003, by and among TRG Holdings, LLC, a Limited Liability Company formed in the State of Delaware, (the "**Company**"), and The Resource Group International Limited, an exempted Bermuda corporation ("**Member Company**").

The parties, each intending to be bound hereby, therefore agree as follows:

### DEFINITIONS

The following terms used in this Operating Agreement shall have the following respective meanings (unless otherwise expressly provided herein);

"**Affiliate**" shall mean, with respect to any Person, any other Person that, directly or indirectly, controls, or is controlled by, or is under direct or indirect common control with, such Person. For the purposes of this definition, "control," when used with respect to any specified Person, shall mean the possession of the power to, directly or indirectly, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise, direct or cause the direction of the management and policies of such Person. The terms "controlling" and "controlled" shall have correlative meanings.

"**Executive Officers**" shall mean the Company's Operating Managers, any vice presidents of the Company in charge of a principal business unit, division or function (such as acquisitions, technology, operations, or finance), any other officers who performs a policy making function or any other person who performs similar policy making functions for the Company, selected by the Chief Executive Officer of the Member Company. Officers of subsidiaries will be deemed Executive Officers of the Company if they perform such policy making functions for the Company.

"**Management**" shall mean the Chief Executive Officer of the Member Company, the Company's Executive Officers and employees engaged in management services for the

Company.

"**ManagementCommittee**" shall mean, collectively the Chief Executive Officer of the Member Company and the Executive Officers of the Company.

"**Ownership Interest**" shall mean the percentage ownership of the Member Company in the Company as set forth herein, and as subsequently adjusted pursuant to the terms of this Agreement, which initially shall be 100%.

"**Persons**" shall mean any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"**Subsidiary**" shall mean any corporation, partnership or other entity more than 50% of whose equity interests (measured by virtue of voting rights) in the aggregate is owned by the Company.

## SECTION 1: THE LIMITED LIABILITY COMPANY

The Resource Group International Limited (the "**Member Company**"), is the sole member of a Delaware limited liability company under the name TRG Holdings, LLC, (the "**Company**"), and both parties hereby agree that the rights, liabilities, and obligations shall be governed and controlled on the terms and conditions in this Operating Agreement (the "**Agreement**") and pursuant to the Delaware Limited Liability Company Act (the "**Act**"). The rights and obligations of the parties are as provided in the Act except as otherwise expressly provided in this Agreement.

**1.1**     **Name**. The business of the Company will be conducted under the name TRG Holdings, LLC, or such other name as the Management Committee may unanimously agree.

**1.2**     **Purpose.** The Company is a wholly owned subsidiary of the Member Company may conduct or promote any lawful business or purpose that a partnership or corporation may conduct or promote. The primary purpose of the Company is to seek and manage investment opportunities exclusively for the Member Company in the technology services businesses, and to engage in all activities reasonably necessary and incidental thereto. The forgoing statement of purposes shall not serve as a limitation on the powers or

TRG 00006

abilities of the Company and the Company shall be permitted to engage in any lawful activities.

**1.3    Principal Office.** The Company will maintain its principal business at 1400 Terra Bella Avenue, Suite L, Mountain View, California 94043, or such other place of business as may be determined by the Management Committee.

**1.4    Registered Agent.** The registered office of the Company and the registered agent at this address are as follows:

> Business Filings Incorporated
> 9 East Loockerman Street
> Suite 205
> Dover, DE 19901

The registered office and agent may be changed from time to time as the Management Committee may see fit, by filing a change of registered agent or office with the state where the Company was organized. It will not be necessary to amend this Agreement if such a change is made.

**1.5    Term.** The term of the Company commenced on the date of its initial registration with the Delaware Secretary of State, on December 17, 2001 and shall be perpetual unless sooner terminated as provided in this Agreement or dissolution of the Member Company.

**1.6    Current Name and Addresses of the Member Company.** The Member Company's name and address are as follows

| Name | Address |
|------|---------|
| The Resource Group International Limited | 18 Parliament Street |
|  | Hamilton, Bermuda |

## SECTION 2:   CAPITAL CONTRIBUTION

**2.1    Ownership Interest.** The Member Company has made a capital contribution of its interest in certain property and cash contributions reflected in the Company's books in

Operating Agreement                    Page 3 of 15                    March 20, 2003

TRG 00007

exchange for their Units ("**Initial Units**").

**2.2    Additional Capital Contribution.** The Member Company will provide the funds necessary capital to meet such obligations of the Company as and when they become due.

**2.3    Additional Members.** The Company may issue additional Interests or Units to any Persons and Entities (including to existing Members) for such Capital Contributions and on such terms and conditions as the Members may determine. Such additional Interests or Units may have different rights regarding voting, profit and loss allocations and distribution, whether subordinate or preferred, as the Members may determine.

**2.4    Limitation of Liability.** No Member of the Company shall be personally liable for the expenses, debts, obligations or liabilities of the Company, or for claims made against it.

**2.5    Restrictions on Authority of the Members; Major Decisions.** In addition to the limitations set forth elsewhere herein, no Member shall, without the consent of all of the Members entitled to vote hereunder at such time:

(a)    Do any act in contravention of this agreement;

(b)    Possess Company property, or assign the Company's rights in specific Company property in trust for creditors, or on the assignee's promise to pay the debts of the Company, or for other than a purpose of the Company to be able to fulfill those purposes;

(c)    Admit additional or substitute Members to the Company except as otherwise provided herein;

(d)    Change or reorganize the Company into any other legal form; or

(e)    Cause the Company to engage in any business other than the Company's business or extend the scope of the Company's business, by implication or otherwise.

## SECTION 3: MANAGEMENT AND OFFICERS

**3.1    Management.** The management and control of the Company and its business and affairs are exclusively in the Management Committee.

TRG 00008

**3.2    Appointment of Executive Officers**.    Notwithstanding Section 3.1, the Management Committee agrees that the right to manage the day-to-day operations of the Company rests exclusively in the Executive Officers. Consistent with and subject to the foregoing, the Executive Officers have all the rights and powers that may be possessed by a manager in a limited liability company with managers pursuant to the Act, and such rights and powers as are otherwise conferred by law or are necessary, advisable, or convenient to the discharge of the Executive Officers' duties under this Agreement and to the management of the business and affairs of the Company. Without limiting the generality of the foregoing the Executive Officers have the following rights:

(a)    To expend the funds of the Company in furtherance of the Company's business;

(b)    To execute, deliver, and perform on behalf of and in the name of the Company, without any other signature, agreements and documents deemed necessary or desirable by the Executive Officers to carry out the business of the Company, including any lease, deed, easement, bill of sale, mortgage, trust deed, security agreement, contract of sale, or other document conveying, leasing, or granting a security interest in the interest of the Company in any of its assets, or any part thereof, whether held in the Company's name, the name of the Executive Officers, or otherwise;

(c)    To borrow or raise money on behalf of the Company for the benefit of the Company from banks, other lending institutions, the Management Committee, or Affiliates of the Management Committee on such terms as they deem appropriate, from time to time, to draw, make, accept, endorse, execute, and issue promissory notes, drafts, checks, and other negotiable or nonnegotiable instruments and evidences of indebtedness, and to secure their payment by mortgage, security agreement, pledge, conveyance, or assignment in trust of the whole or any part of the assets of the Company, including contract rights.    Except as otherwise provided in the state statutes, no debt shall be contracted or liability incurred by, or on behalf, of the Company except by unanimous consent of the Management Committee.

(d)    To acquire property for the Company;

(e)    To open bank accounts in the name of the Company, and to determine the signatories on the accounts;

(f)    To perform all acts necessary to fulfill the purposes of the Company, including engaging Persons the Executive Officers deems advisable to fulfill those purposes;

(g)    To make all employment related decisions on a day-to-day basis; and

TRG 00009

(h)   To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business;

Unless authorized to do so by this Operating Agreement or by the Management Committee, no Member, Agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render the Company liable for any purpose.

**3.3    Duties of the Executive Officers.**   The Executive Officers must take all actions that may be necessary or appropriate for the continuation of the Company's valid existence as a limited liability company under the laws of Delaware and of each jurisdiction in which such existence is necessary for the Company to conduct the business in which it is engaged and for the accomplishment of the Company's purposes, including the preservation and operation of Company assets in accordance with the provisions of this Agreement and applicable laws and regulations.

**3.4    Limitation on Liability of Management Committee.**   The Management Committee has no liability to the Company or to any other Member for any loss suffered by the Company or any Member that arises out of any action or inaction of the Management Committee if the Management Committee, in good faith, determined that such course of conduct was in the best interest of the Company and such course of conduct did not constitute gross negligence or intentionally wrongful misconduct.

**3.5    Indemnification of Management Committee.** The Management Committee is not personally liable for any debt, obligation, or liability of the Company merely by reason of being a Management Committee. To the fullest extent provided or allowed by the laws of Delaware, the Company will indemnify the Management Committee, in his, her or its capacity as the Management Committee, from and against all costs, losses, liabilities, damages, claims, and expenses (including attorney fees as incurred at trial and on appeal) (collectively, "Claims") arising from actions or inactions taken or omitted in his, her or its capacity as the Management Committee, including, without limitation, action taken or omitted by the Management Committee consistent with this Agreement and in furtherance of the business or affairs of the Company. The satisfaction of any indemnification of the Management Committee under this Agreement will be from, and limited to, Company assets, and the Management Committee will not have any personal liability on account thereof.

TRG 00010

**3.6     Decisions.**  Whenever in this Agreement reference is made to the decision, consent, approval, judgment, or action of the Management Committee, unless otherwise expressly provided in this Agreement, such decision, consent, approval, judgment, or action shall mean a majority of the Management Committee.     Whenever in this Agreement reference is made to the decision, consent, approval, judgment, or action of the Members, unless otherwise expressly provided in this Agreement, such decision, consent, approval, judgment, or action shall mean a majority in interest of the Members.

**3.7     Resignation.**  Any Executive Officer of the Company may resign at any time by giving written notice to the Management Committee of the Company. The resignation of any Executive Officer shall take effect upon receipt of notice thereof, or at such later time as shall be specified in such notice.  However, this time may not be before the notice is mailed, delivered, or sent by facsimile transmission, the acceptance of such resignation shall not be necessary to make it effective.

**3.8     Removal of Executive Officers.**   At a meeting called expressly for that purpose, all or any lesser number of Management Committee may be removed at any time by a Management Committee' majority vote, with or without cause.

## SECTION 4:  ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

**4.1     Income and Loss Determination.**  The Company's taxable income or loss for each fiscal year will be determined as of the end of the fiscal year by the Company's accountants in accordance with federal income tax accounting principles, consistently applied, using that method of accounting employed in the federal income tax informational return filed by the Company for that fiscal year.

**4.2     Distributions.**  Unless otherwise agreed by a unanimous vote of the Management Committee at the end of each quarter, the Company shall distribute at least 70% of Net Profit each quarter to the Member Company; provided that the distributions may be reduced by the amount of payment on back taxes or loan principal made during that quarter.

**4.3     Allocations of Income and Loss.**  All items of income, gain, loss, deduction, and credit will be allocated to the Member Company.

TRG 00011

**4.4     Availability of Distribution.**   Notwithstanding Section 4.2, no distribution may be made to Member Company if, after giving effect to the distribution, (1) the Company would not be able to pay its debts as they become due in the ordinary course of business, or (2) the fair value of the total assets of the Company would not at least equal its total liabilities.

**4.5     No Right to Demand Return of Capital.** Member Company has no right to any return of capital or other distribution except as expressly provided in this Agreement. Member Company has no drawing account in the Company.

**SECTION 5.     SALARIES, REIMBURSEMENT, OPTIONS AND PAYMENT OF EXPENSES**

**5.1     Organization Expenses.**  All expenses incurred in connection with organization of the Company will be paid by the Company.

**5.2     Reimbursements.**  The Management Committee is entitled to reimbursement from the Company for actual out-of-pocket expenses of the Company.

**5.3     Salaries.**   The Executive Officers shall receive compensation for services rendered to the Company pursuant to the Employment Agreement.

**5.4     Insurance.**  At all times, the Executive Officers must obtain and keep in full force and effect a comprehensive public liability policy and a property damage policy in amounts, with companies, and on terms acceptable to the Management Committee. Each policy of insurance covering any Company property or any portion of any Company property must provide that the policy may not be canceled without at least 10 days' written notice to the Management Committee.

**5.5     Legal and Accounting Services**. The Management Committee are authorized to obtain legal and accounting services to the extent reasonably necessary for the conduct of the Company's business.

**5.6     Options.** Each new issue of shares by the Member Company in The Resource

TRG 00012

Group International Limited ("**New Issue**"), (other than an issue of shares pursuant to the exercise of an option) will require the Member Company to grant options to Management to purchase shares ("**Management Options**") in an aggregate amount such that the total number of shares issued to holders of Management Options will be equal to 25% of the total number of stocks in issue (assuming that all Management Options are fully exercised). The Management Options shall be granted at an exercise price equal to the price at which the Company issues the New Shares, and the exercise date shall be the date of such issue. Allocation of the Management Options shall be at the sole discretion of the Chief Executive Officer of the Member Company. Member Company may provide loans to Management to purposes of exercising options.

## SECTION 6 BOOKS OF ACCOUNT, ACCOUNTING REPORTS, TAX RETURNS, FISCAL YEAR, BANKING

**6.1     Information and Inspection Rights.** The Company will deliver to the Member Company:

**6.1.1**    as soon as practicable after the end of the first three quarters of any fiscal year, and in any event within 60 calendar days thereafter, unaudited balance sheets of the Company as of the end of each such quarter, and unaudited statements of income and cash flow for each such quarter and for the current fiscal year to date, which quarterly financial statements shall be in reasonable detail and shall be prepared in accordance with GAAP (other than for accompanying notes) and signed by an Executive Officer of the Company certifying that they fairly and accurately present the financial condition and results of operation of the Company, subject to changes resulting from year-end audit adjustment;

**6.1.2**    as soon as practicable after the end of each fiscal year of the Company, and in any event within 90 days thereafter, an audited balance sheet of the Company as of the end of each such year and audited statements of income, and cash flow for each such year, which year-end financial reports shall be in reasonable detail and shall be prepared in accordance with GAAP and signed by an Executive Officer of the Company certifying that they fairly and accurately present the financial condition and results of operation of the Company, subject to changes resulting from year-end audit adjustment and, at the discretion of the Management Committee, accompanied by the opinion of independent public accountants of nationally recognized standing selected by the Company as its independent accountants;

**6.1.3**    an annual capitalization summary;

TRG 00013

**6.1.4** upon the request of Member Company or as soon as practicable after the end of each month and in any event within seven calendar days thereafter, a list of all capital expenditures for each such month; and

**6.1.5** other business, financial, operating or corporate information regarding the Company that is reasonably requested by a Member Company from time to time

**6.2    Inspection.** The Company shall permit Member Company, at Member Company's expense, to access and inspect the Company's properties, to examine its books of account and records and to discuss the Company's affairs, finances, and accounts with its management and employees, all at such reasonable times as may be requested by Member Company.

**6.3    Books of Account.** At the expense of the Company, the Executive Officers must maintain records and accounts of all operations and expenditures of the Company at the principal office of the Company. At a minimum, the Company records must include (1) a current list of the full name and last-known business, residence, or mailing address of each Member, both past and present; (2) a copy of the Articles of Organization and all amendments; (3) a copy of the Company's currently effective written Operating Agreement and all amendments; and (4) copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years. Member Company has access to these at all reasonable times. The Executive Officers must keep and maintain books and records of the operations of the Company that are appropriate and adequate for the Company's business and for carrying out this Agreement.

**6.4    Tax Returns.** The Executive Officers must cause to be prepared and, on the review and approval of them by a Majority of the Members, must timely file with the appropriate authorities as necessary all federal and state income tax returns for the Company. Within 90 days after the end of each taxable year, or within a lesser time prescribed by the Internal Revenue Service, Member Company will be furnished with a statement that may be used by the Member Company in the preparation of the Member Company's income tax returns, showing the amounts of any distributions, gains, profits, losses, deductions, or credits allocated to him or her during the fiscal year.

**6.5    Method of Accounting.** The Company will use the method of accounting as determined by the Members for financial reporting and tax purposes.

**6.6    Fiscal Year; Taxable Year.** The fiscal year and the taxable year of the Company is the calendar year.

**6.7    Capital Accounts.** The Company will maintain a capital account for Member Company on a cumulative basis in accordance with federal income tax accounting principles

TRG 00014

set forth in Treasury Regulation §1.704-1(b)(2)(iv).

**6.8    Banking.** All funds of the Company will be deposited in a separate bank account or in an account or accounts of a savings and loan association in the name of the Company as determined by the Members. Company funds will be invested or deposited with an institution, the accounts or deposits of which are insured or guaranteed by an agency of the United States government.

**6.9    Management of Funds.** The Executive Officers must hold and disburse all funds of the Company in accordance with the terms of this Agreement and must account for all funds as a fiduciary. All funds of the Company held by a Member must be held in trust for the benefit of the Company and must not be commingled with other funds of a Member, not be the personal property of a Member, and, to the maximum extent permitted by law, not be vulnerable to inclusion in the bankruptcy estate of a Member.

## SECTION 7: RESTRICTIONS ON TRANSFERABILITY

**7.1    Sale or Encumbrance Prohibited.** Except as permitted in this Agreement, no Member may voluntarily or involuntarily, directly or indirectly, transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the unanimous consent of the Management Committee.

**7.2    Restrictions on Transfer.** No Member shall sell, transfer, assign, pledge, mortgage or in any other way dispose of or encumber its Ownership Interest in the Company or its rights under this Agreement; provided that the following are permitted transfers: (i) a transfer by a Member of all of its Ownership Interest to an Affiliate, subject to such Affiliate's written agreement to be bound by the terms of this Agreement; or (ii) a transfer by a Member of all of its Ownership Interest to a third party, provided such transfer is consented to in writing by the other Member of the Company and the third party agrees in writing to be bound by the terms of this Agreement and the other Transactional Agreements.

## SECTION 8: DISSOLUTION AND WINDING UP OF THE COMPANY

**8.1    Dissolution.** The Company will be dissolved on the happening of any of the following events:

> **8.1.1**   The consent of all of the Management Committee to dissolve the Company;
>
> **8.1.2**   Dissolution of Member Company; or

TRG 00015

**8.1.3**  By operation of law.

**8.2**  **Winding Up.**  On the dissolution of the Company, the Management Committee must take full account of the Company's assets and liabilities, and the assets will be liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the extent sufficient to pay the Company's obligations with respect to the liquidation, will be applied and distributed, after any gain or loss realized in connection with the liquidation has been allocated in accordance with Section 4 this Agreement, and the Member Company's capital accounts have been adjusted to reflect the allocation and all other transactions through the date of the distribution, in the following order:

**8.2.1**  To payment and discharge of the expenses of liquidation and of all the Company's debts and liabilities to persons or organizations including the Management Committee; and

**8.2.2**  To Member Company on the date of distribution; provided, however, that any then-outstanding Default Advances (with interest and costs of collection) first must be repaid from distributions otherwise allocable to the Defaulting Member pursuant to Section 2.

**8.3**  **Articles of Dissolution.**  When all debts, liabilities and obligations of the Company have been paid or discharged, or adequate provisions have been made therefore, and all of the remaining assets of the Company have been distributed to the Member Company, articles of dissolution shall be executed in duplicate and verified by the person signing the articles of dissolution, and shall be filed with the Secretary of State. Upon such filing the existence of the Company shall cease, except as provided by state statute.

**8.4**  **Non-recourse to Other Members.**  Except as provided above and by law, upon dissolution, each Member shall look only to the assets of the Company for the return of his or her capital contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash or other property contribution of one or more Members, such Member or Members shall have no recourse against any other Member.

## SECTION 9: GENERAL PROVISIONS

**9.1**  **Amendments.**  Amendments to this Agreement may be proposed by any Member. A proposed amendment will be adopted and become effective as an amendment only on the written approval of the Management Committee and by a majority vote of the Management Committee to the extent they are affected by the amendment.

TRG 00016

**9.2     GoverningLaw.** This Agreement and the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the state of Delaware (without regard to principles of conflicts of law).

**9.3     Confidentiality.**     Except as set forth in this Section 9.3, under no circumstances and at no time during or after the term of this Agreement will any Member directly or indirectly, disclose, divulge, render or offer any knowledge or information with respect to the affairs or plans of the Company, except in the course of the proper performance of its duties hereunder or unless otherwise in the public domain or if required by law or regulation or rule of any applicable securities exchange. The Management Committee agree that the Executive Officers's discussions of the Company's operations with Affiliates of Member Company will not constitute a breach of this Section 9.3.

**9.4     Waiver of Action for Partition.** Management Committee irrevocably waives, during the existence of the Company and during the period of its winding up and liquidation following any event of dissolution, any right that the Member may have to maintain any action for partition with respect to any of the assets of the Company.

**9.5     Counterparts.** This Agreement may be executed in any number of counterparts, including by facsimile, with the same effect as if all parties had signed the same counterpart. All counterparts will be construed together and will constitute one and the same Agreement. A single counterpart may be introduced as evidence of this Agreement.

**9.6     Parties in Interest.** Subject to the limitations on transfers of Ownership Interests set forth in Section 8 of this Agreement, each and every covenant, term, provision, and agreement is binding on and inures to the benefit of the parties and their heirs, successors, assigns, and legal representatives.

**9.7     Expenses.** Member Company will bear all fees and expenses incurred by the Company with respect to this Agreement and the transactions contemplated hereby.

**9.8     Entire Agreement; Modification.** This Agreement constitutes the entire understanding and agreement between the Company and the Member Company with respect to the subject matter of this Agreement. There are no agreements, understandings, restrictions, representations, or warranties between the Company and the Member Company other than those in this Agreement or referred to or provided for in this Agreement. No modification or amendment of any provision of this Agreement will be binding on any Member unless it is in writing and signed by the Management Committee.

**9.9     AttorneyFees.** In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled to recover, in addition to other costs, reasonable attorney fees in connection with the

TRG 00017

suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the arbitrator, court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

**9.10    Severability.** If any term or provision of this Agreement is held to be void or unenforceable, that term or provision will be severed from this Agreement, the balance of the Agreement will survive, and the balance of this Agreement will be reasonably construed to carry out the intent of the parties as evidenced by the terms of this Agreement.

**9.11    Captions.** The captions used in this Agreement are for the convenience of the parties only and will not be interpreted to enlarge, contract, or alter the terms and provisions of this Agreement.

**9.12    Notices.** All notices required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, or if transmitted by facsimile or electronically, upon confirmation of receipt, directed to the addresses first shown above for each Member or to any other address that a Member may specify by notice given in conformance with these provisions to the other Members.

TRG 00018

IN WITNESS WHEREOF, the parties to this Agreement execute this Operating Agreement as of the date and year first above written.

CERTIFICATE, The undersigned certify the foregoing operating agreement to be effective as of the date the articles of organization of the Company are accepted for filing by the Secretary of State.

**Company:**

**TRG HOLDINGS, LLC**
a Delaware LLC

By: _____

Name: Mohammed Khaishgi
Title: Chief Operating Officer

Address:  1400 Terra Bella Avenue,
Suite L
Mountain View, California 94043

**Member:**

**THE RESOURCE GROUP INTERNATIONAL LIMITED**
an exempted Bermuda corporation

By: _____

Name: Zia Chishti
Title: Chief Executive Officer and Chairman of the Board

Address:  18 Parliament Street,
Hamilton, Bermuda

with a copy to:
Heller Ehrman White & Mc Auliffe LLP
275 Middlefield Road
Menlo Park, CA  94025
Attention:  Julian N. Stern, Esq.
Fax:  (650) 324-0638

Operating Agreement                  Page 15 of 15                  March 20, 2003

TRG 00019

## Certificate of Conversion
For
## "Other Business Entity"
Into
## Florida Profit Corporation

This Certificate of Conversion **and attached Articles of Incorporation** are submitted to convert the following **"Other Business Entity" into a Florida Profit Corporation** in accordance with s. 607.1115, Florida Statutes.

1.  The name of the "Other Business Entity" immediately prior to the filing of this Certificate of Conversion is:

    e-Telequote Insurance, LLC  (L05-13368)

2.  The "Other Business Entity" is a Limited Liability Company first organized, formed or incorporated under the laws of the State of Florida on February 1, 2005.

3.  If the jurisdiction of the "Other Business Entity" was changed, the state or country under the laws of which it is now organized, formed or incorporated: N/A.

4.  The name of the Florida Profit Corporation as set forth in the attached Articles of Incorporation:

    e-Telequote Insurance, Inc.

5.  If not effective on the date of filing, enter the effective date: October 31, 2013.

    Signed this 31st day of October, 2013.

## Required Signature for Florida Profit Corporation:

Signature of Chairman, Vice Chairman, Director, Officer, or, if Directors or Officers have not been selected, an Incorporator:

Printed Name: Anthony Solazzo                    Title: Incorporator

## Required Signature(s) on behalf of Other Business Entity:

Signature: _____
Printed Name: Anthony Solazzo                    Title: Authorized Representative

SECRETARY OF STATE
TALLAHASSEE, FLORIDA
13 NOV -7 AM 8: 22

MIAMI 3819782.1 80599/43133

## ARTICLES OF INCORPORATION
In compliance with Chapter 607 and/or Chapter 621, F.S. (Profit)

### ARTICLE I - NAME

The name of the corporation shall be:        e-TeleQuote Insurance, Inc.

### ARTICLE II - PRINCIPAL OFFICE

The principal place of business and mailing address is:

14450 46th Street North, Suite 105
Clearwater, FL  33762

### ARTICLE III - PURPOSE

The purpose for which the corporation is organized is: Any and all lawful business.

### ARTICLE IV - SHARES

The aggregate number of shares which the corporation shall have authority to issue is One Thousand Five Hundred (1,500) shares of common stock, each share having a par value of One Cent ($0.01).

### ARTICLE V - INITIAL OFFICERS AND/OR DIRECTORS

The names, addresses and specific titles of the officer and directors of the corporation are:

Anthony P. Solazzo          Title:  Director/President/CEO
1520 Gulf Blvd. #707
Clearwater, FL 33767

Hasnain Aslam              Title:  Director
1700 Penn Avenue, Suite 560
Washington, DC  20006

Mohammed Khaisghi          Title: Director
1700 Penn Avenue, Suite 560
Washington, DC  20006

### ARTICLE VI - REGISTERED AGENT

The name and Florida street address of the registered agent is:

Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

MIAMI 3819782.1 80599/43133

## ARTICLE VII - INCORPORATOR

The name and address of the Incorporator is:

Anthony P. Solazzo
1520 Gulf Blvd. #707
Clearwater, FL 33767

## ARTICE VIII - EFFECTIVE DATE

The effective date of filing of the corporation is <u>October 31, 2013</u>.

*Having been named as registered agent to accept service of process for the above stated corporation at the place designated in this certificate, I am familiar with and accept the appointment as registered agent and agree to act in this capacity.*

Sue G. Knight
**Assistant Vice President**

_____          10/31/2013
Required Signature/Registered Agent                Date

*I submit this document and affirm that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.*

_____          10/31/2013
Required Signature/Incorporator                    Date

13 NOV -7 AM 8: 22
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

MIAMI 3819782.1 80599/43133

**UNANIMOUS WRITTEN CONSENT OF**
**THE SOLE MEMBER OF**
**TRG INSURANCE SOLUTIONS, LLC**
**April 7, 2010**


The undersigned, being the owner of all membership interests in TRG Insurance Solutions, LLC, a Florida company (the "Company"), hereby consents in writing to, the adoption of the following resolutions as though adopted at a duly called and held meeting of members as of March 16, 2010.

**WHEREAS**, by an Asset Purchase Agreement and related agreements dated March 16, 2010 between the Company, Anthony Solazzo ("Solazzo"), and Tranzsubco I Corp ("Tranzact"), the Company sold its Tampa business to Tranzact and acquired all membership interests held by Solazzo, thus becoming the sole member of the Company (collectively the "Transaction");

**WHEREAS**, as part of this transaction Solazzo resigned from the Board of Directors of the Company (the "Board") and as the President of the Company, and further that the secretary of the Company resigned;

**RESOLVED**, that the Board is hereby stripped of all directors as of March 16, 2010 and replaced with the following directors:  Hasnain Aslam and Shuja Keen.

**RESOLVED**, that Pat Costello is hereby appointed as the Secretary of the Company as of March 16, 2010.

**RESOLVED FURTHER**, , that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions are ratified and affirmed.

**IN WITNESS HEREOF**, the undersigned approves of these resolutions in its capacity as the sole member of the Company as of the date first written above.


_____

Mohammed Khaishgi
COO
TRG Holdings LLC

# Remaining Exhibits Filed Under Seal

# Exhibit C
# (Filed Under Seal)