**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LYDIA NICHOLSON and BRAD BASSETT, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 14-cv-4269 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| E-TELEQUOTE INSURANCE, INC. and TRG HOLDINGS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant TRG Holdings, LLC's motion to dismiss [35] for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, Defendant's motion [35] is granted. Plaintiffs' claims against Defendant TRG Holdings, LLC are dismissed without prejudice. The case remains pending against Defendant e-TeleQuote and is set for a future status hearing on October 22, 2015 at 9:00 a.m.

**I.    Background**

Plaintiffs Lydia Nicholson and Brad Bassett, suing individually and on behalf of a putative class of all others similarly situated, allege that Defendants e-TeleQuote Insurance, Inc. ("e-TeleQuote") and TRG Holdings, LLC ("TRG") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by making unsolicited telemarketing calls (peddling insurance products) to individuals who placed their phone numbers on the federal Do Not Call Registry.

Plaintiffs are from California and Washington. Defendant e-TeleQuote is a Florida corporation with its principal place of business in Florida, and Defendant TRG is a Delaware limited liability company with its principal place of business in Washington, D.C. Defendant e-TeleQuote is a subsidiary of e-TeleQuote plc (a U.K. company), 80 percent of which is owned

by a holding company called The Resource Group International, Ltd. (a Bermuda company). Defendant TRG is a portfolio management company (and a wholly-owned subsidiary of The Resource Group International, Ltd.) that provides "strategic advice" to The Resource Group International, Ltd. regarding its various portfolio companies, including e-TeleQuote.

Plaintiffs sued Defendants in Illinois state court, purportedly based on Defendant e-TeleQuote's business dealings in that state. Specifically, e-TeleQuote is registered to do business in Illinois (TRG is not), 10 percent of e-TeleQuote's income in 2012 was derived from business transactions in Illinois, and "over half" of its income from July 2010 to June 2011 was derived from business transactions in Illinois (although e-TeleQuote was organized as "TRG Insurance Solutions LLC" at the time). Defendants removed the case to federal court, invoking this Court's federal jurisdiction under 28 U.S.C. § 1331.

Defendant e-TeleQuote answered Plaintiffs' complaint without raising any objections as to personal jurisdiction. Defendant TRG, however, has moved to dismiss the claims against it, arguing that "TRG has absolutely no connection to the challenged conduct nor to the State of Illinois, and at no time has TRG ever engaged in the types of telemarketing activities alleged in the Complaint. Rather, TRG is a portfolio management company that provides The Resource Group with strategic advice relating to its numerous portfolio companies worldwide, one of which is e-TeleQuote." [35, at 3.] The Court allowed limited discovery over this jurisdictional issue only. [See 22.]

Plaintiffs claim that TRG exercises substantial control over e-TeleQuote, and that TRG is e-TeleQuote's "alter ego." Plaintiffs argue that e-TeleQuote's business contacts in Illinois should therefore be imputed to TRG for purposes of assessing personal jurisdiction. In support of their argument that TRG controls e-TeleQuote, Plaintiffs assert the following four allegations:

    1.      e-TeleQuote was an undercapitalized, "cash hungry" company kept afloat by millions of dollars in loans and capital contributions from TRG;

    2.      TRG dominated e-TeleQuote's board of directors;

    3.      TRG was originally the 100% owner of e-TeleQuote; and

    4.      TRG, either directly or through other related corporate entities, supplied e-TeleQuote with dialer equipment; consulting services for that equipment; cheap, outsourced telemarking services in Pakistan; and free legal services supplied by TRG's general counsel, Pat Costello.

[44, at 1, 4.]

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs dismissals for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court does not hold an evidentiary hearing but instead reviews the defendant's motion based on the submission of written materials, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.*

In a federal-question case where the operative federal statutes do not authorize nationwide service of process (which the TCPA does not in private actions, see 47 U.S.C. § 227), "a federal court in Illinois may exercise personal jurisdiction over [a defendant] if it would be permitted to do so under the Illinois long-arm statute." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). Under Illinois' long-arm statute, courts are permitted to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment. See 735 ILCS 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the

Constitution of the United States."); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (noting no operative difference between federal constitutional and Illinois constitutional personal jurisdiction limitations, but acknowledging that the "two standard hypothetically might diverge"). The parties do not argue that there is any material divergence between the state and federal standards governing general jurisdiction, and so the Court will anchor its opinion in the federal due-process principles as recently articulated by the Supreme Court,[1] as well as the recent Seventh Circuit cases reflecting on those opinions.[2]

"The canonical opinion in this area remains *International Shoe*, * * * in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "*International Shoe*'s conception of 'fair play and substantial justice' presaged the development of two categories of personal jurisdiction"—specific and general. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); see also *Philos Techs., Inc. v. Philos & D, Inc.*, --- F.3d ---, 2015 WL 5562178 (7th Cir. Sept. 22, 2015) (noting that "there are two branches of personal jurisdiction theory—general and specific"); *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("In the realm of personal jurisdiction, federal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and

---

[1] *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753–58 (2014).

[2] *Abelesz v. OTP Bank*, 692 F.3d 638, 654–55 (7th Cir. 2012); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732–33 (7th Cir. 2013); *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014); *Snodgrass v. Berklee College of Music*, 559 F. App'x 541, 542–43 (7th Cir. 2014); *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015); *Philos Techs., Inc. v. Philos & D, Inc.*, --- F.3d ---, 2015 WL 5562178 (7th Cir. Sept. 22, 2015).

general or all-purpose jurisdiction."). Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). But at issue here is general jurisdiction (or "all-purpose" jurisdiction),[3] which exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear*, 131 S. Ct. at 2851) (internal quotation marks and alteration omitted).

Despite the fact that "post-*International Shoe* opinions on general jurisdiction * * * are few," *Daimler*, 134 S. Ct. at 754–55, "[i]n recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction[,] * * * emphasiz[ing] that is should not lightly be found."[4] *Kipp*, 783 F.3d at 698. There are two paradigmatic forums in which courts have jurisdiction over corporations: the state of the corporation's principal place of business and its state of incorporation. *Id.*; *Daimler*, 134 S. Ct. at 760 ("*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply types those places paradigm all-purpose forums."). In deciding whether to expand that list, the relevant inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761; *Kipp*, 783 F.3d at 698 ("Any additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*. Those criteria require more than the 'substantial, continuous, and systematic course of business'

---

[3] Plaintiffs concede that they "do not assert at this time that the Court has personal jurisdiction over TRG based on specific jurisdiction." [44, at 6.]

[4] Inexplicably, the parties avoid any mention of the Supreme Court's recent take on general jurisdiction as set forth in *Goodyear* and *Daimler*, or the handful of Seventh Circuit cases reflecting on those opinions.

that was once thought to suffice."). Corporations are not "at home" in a state simply because their sales in that state are sizeable—"[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 134 S. Ct. at 762 (quoting *Burger King*, 471 U.S. at 472).

### III. Analysis

To be clear, "Plaintiffs do not assert at this time that the Court has personal jurisdiction over TRG based on *specific* jurisdiction." [44, at 6 (emphasis added).]; *cf. Daimler*, 134 S. Ct. at 758 ("Plaintiffs have never attempted to fit this case into the *specific* jurisdiction category."). Instead, Plaintiffs put all of their eggs in the "general jurisdiction" basket, first claiming that "this Court has general jurisdiction over *e-TeleQuote* under the 'doing business' standard of personal jurisdiction," [44, at 7 (emphasis added)], and then arguing that e-TeleQuote's jurisdictional contacts with Illinois should be imputed onto TRG (via "substantial control" and "alter ego" theories) such that the Court also has general jurisdiction over TRG. See, *e.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) ("Imputation * * * requires 'an unusually high degree of control' or that the subsidiary's 'corporate existence is simply a formality.'" (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003))). To reiterate the applicable standard, general jurisdiction "exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Kipp*, 783 F.3d at 697–98 (quoting *Goodyear*, 131 S. Ct. at 2851) (internal quotation marks and alteration omitted).

Plaintiffs' imputation arguments have two components. First, if Plaintiffs can show that TRG substantially controls (or is the alter ego of) e-TeleQuote, then all of e-TeleQuote's Illinois

contacts will be viewed as TRG's Illinois contacts. Second—because Plaintiffs argue that the Court has *general* jurisdiction over TRG—Plaintiffs must show that TRG's Illinois contacts (including those it adopted from e-TeleQuote) make TRG "at home" in Illinois.[5] See, *e.g.*, *Fletcher v. Doig*, --- F. Supp. 3d ---, 2014 WL 4920238, at *5 (N.D. Ill. Sept. 30, 2014) (concluding that the contacts of an agent were imputed to the principal for purposes of personal jurisdiction, and then addressing the separate question of whether those imputed contacts were sufficient to support the exercise of *specific* personal jurisdiction over the principal—the only brand of personal jurisdiction advanced by the plaintiffs).

Plaintiffs fail to argue the second component of this argument entirely, expending all of their efforts arguing that TRG controls e-TeleQuote without explaining how that control translates into the Court having all-purpose jurisdiction over TRG. In other words, Plaintiffs attempt to impute e-TeleQuote's Illinois contacts onto TRG (*i.e.*, the 10 to 50 percent of e-TeleQuote's business that it conducted in Illinois in 2010, 2011, and 2012), but fail to explain how the imputation of e-TeleQuote's Illinois contacts results in TRG being "at home" in Illinois. The implication from the parties' briefs is that TRG has *no* Illinois contacts other than those potentially imputed from e-TeleQuote.[6] Because TRG also does business with other portfolio companies (likely involving ties with other states), TRG's overall ties to Illinois likely would be a watered-down version of e-TeleQuote's ties. Regardless, to establish general jurisdiction,

---

[5] There are only two bases for personal jurisdiction: general and specific. *Abelesz*, 692 F.3d at 654. "Alter ego" theory and "substantial control" theory are not independent bases for personal jurisdiction; they only allow the imputation of in-state contacts from one defendant to another. Simply showing that one corporation that has submitted to personal jurisdiction in a particular court is the alter ego of a second corporation does not mean, without more, that the court has personal jurisdiction over the second corporation. A plaintiff must still establish that the court has general and/or specific jurisdiction over the second corporation.

[6] TRG says that none of its directors, officers, employees, or agents has ever resided in Illinois, nor have any of them traveled to Illinois for purpose of conducting business in the state. TRG does not have any offices in Illinois, and TRG has never contracted to do business with any company in Illinois. [36, at 4.]

7

Plaintiffs must show that, *overall*, TRG does business in Illinois to the extent that Illinois should be considered its second (actually, third) home.

Even giving Plaintiffs the benefit of the doubt in assuming that TRG's Illinois contacts are tantamount to e-TeleQuote's, doing 10 percent of your business in Illinois does not make a corporation "at home" in Illinois. Were this the case, such a corporation easily could have homes in dozens of states (*i.e.*, "in every other State in which [its subsidiaries'] sales are sizable," *Daimler*, 134 S. Ct. at 761), plus its own state of incorporation and principal place of business. But again, "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 134 S. Ct. at 761–62 (quoting *Burger King*, 471 U.S. at 472); see also *Hayward v. Taylor Truck Line, Inc.*, 2015 WL 5444787, at *5 (N.D. Ill. Sept. 14, 2015) ("The emphasis of *Daimler* and *Goodyear*[] is on the appropriate limitation of forums in which corporation are found to be 'at home.'").[7]

The fact that e-TeleQuote did "over half" of its U.S. business in Illinois from mid-2010 to mid-2011 is more the type of contact that could make a corporation "at home" in a state, but (a) those were sales figures from an alleged predecessor company called "TRG Insurance Solutions LLC," and Plaintiffs didn't provide any information detailing this corporate transformation (b) those sales figures dropped dramatically in the following year (from 50 percent to 10 percent), showing a sizeable year-by-year disparity and a lack of permanence and continuity (*i.e.*, sales figures in Illinois are not "constant and pervasive"), and (c) those sales figures are from 2010 and 2011, but Plaintiffs Nicholson and Bassett (who are from California

---

[7] This Supreme Court precedent casts in a negative light those cases finding that by doing 10 percent of its business in a particular state, a corporation is "at home" there for purposes of general jurisdiction. See, *e.g.*, *Kavo Am. Corp. v. J.F. Jelenko & Co.*, 2000 WL 715602, at *4 (N.D. Ill. June 2, 2000) (citing cases).

and Washington) allege that they received unsolicited telephone calls from e-TeleQuote in January and April of 2014, respectively [1-1, at 49–50], and so it is not entirely clear how e-TeleQuote's Illinois sales statistics from parts of 2010, 2011, and 2012 are even relevant here. Notably, Plaintiffs did not provide any evidence regarding either Defendant's contacts with Illinois in 2014. As a reminder, Plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction. See *Kipp*, 783 F.3d at 697. Providing sales statistics for a prior two-year period and excluding sales statistics from the relevant time period is not a sufficient means of establishing "constant and pervasive" contacts in Illinois, let alone whether e-TeleQuote (and, through imputation, TRG) is "at home" in Illinois.

The Supreme Court's "at home" standard in *Goodyear* and *Daimler* comports with how Illinois courts interpret the "doing business" provision in their long-arm statute (upon which Plaintiffs so heavily rely), where Illinois courts have held that "[t]he 'doing business' standard is quite high and requires a showing that the defendant is conducting business of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the forum." *Palen v. Daewoo Motor Co.*, 832 N.E.2d 173, 183 (Ill. App. Ct. 2005) (internal quotation marks and citation omitted); *Alderson v. Southern Co.*, 747 N.E. 926, 940 (Ill. App. Ct. 2001) ("The defendant must transact business in Illinois 'not occasionally or casually, but with a fair measure of permanence and continuity.'" (internal quotation marks and citation omitted)); *id.* ("Once the doing business standard is satisfied, the defendant is deemed a resident of Illinois and may be sued on causes of action both related and unrelated to its Illinois activities.").

Based on this legal foundation, the Court need not determine whether TRG substantially controls e-TeleQuote or whether TRG is the alter ego of e-TeleQuote, because even if

e-TeleQuote's Illinois contacts were attributed to TRG, those contacts are not sufficient to establish that TRG is "at home" in Illinois. See *Daimler*, 134 S. Ct. at 762 ("It was therefore error for the Ninth Circuit to conclude that Daimler, even with [its subsidiary's] contacts attributed to it, was at home in [the forum state], and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in [the forum state]."); see also *Kipp*, 783 F.3d at 698 (general jurisdiction "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice" (quoting *Daimler*, 134 S. Ct. at 760–61)); *Hayward v. Taylor Truck Line, Inc.*, 2015 WL 5444787, at *5 (N.D. Ill. Sept. 14, 2015) ("The business contacts alleged by the Haywards may demonstrate a continuous and systematic course of business in Illinois, but do not render Taylor 'essentially at home' in Illinois."). This Court does not have general jurisdiction over TRG.

**IV.    Conclusion**

For the foregoing reasons, Defendant TRG's motion to dismiss [35] is granted. Plaintiffs' claims against Defendant TRG Holdings, LLC are dismissed without prejudice. The case remains pending against Defendant e-TeleQuote and is set for a future status hearing on October 22, 2015 at 9:00 a.m.

Dated:  October 13, 2015

_____
Robert M. Dow, Jr.
United States District Judge